Robert K. Renner (155283), rrenner@bargerwolen.com
James C. Castle (235551), jcastle@bargerwolen.com
BARGER & WOLEN LLP
19800 MacArthur Boulevard, 8th Floor
Irvine, California  92612
(949) 757-2800 / Fax:  (949) 752-6313

Attorneys for Defendants
Metropolitan Life Insurance Company
and Air Products and Chemicals, Inc. Group
Long Term Disability Plan

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN ROWLES,<br><br>        Plaintiff,<br><br>        vs.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, a corporation; and, AIR PRODUCTS AND CHEMICALS, INC GROUP LONG TERM DISABILITY PLAN, an ERISA plan; DOES 1 through 10, inclusive,<br><br>        Defendants. | CASE NO.: CV 11-5158 CBM(DTB)<br><br>**DEFENDANTS' OPENING TRIAL BRIEF**<br><br><br>Trial / Oral Argument<br>DATE:  July 10, 2012<br>TIME:   10:00 a.m.<br>CTRM:  2<br><br>Complaint Filed:  June 21, 2011 |

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

w:\documents and settings\jcc\desktop\rowles opening trial brief final final.doc

# <u>TABLE OF CONTENTS</u>

**PAGE**

1. INTRODUCTION ...................................................................................1

2. METLIFE'S CLAIM INVESTIGATION WAS THOROUGH, COMPREHENSIVE AND YIELDED A CORRECT DETERMINATION ............................................................................3

    A. The Plan Vests Broad Discretionary Authority With MetLife ..................3

    B. The Plan Defines "Disability" ......................................................4

    C. Rowles' LTD Claim, and MetLife's Initial Review.......................5

    D. MetLife Properly Concluded That Rowles Did Not Meet The Plan's Definition of Disability...................................................................9

    E. Following Its Thorough Review of Rowles' Administrative Appeal, MetLife Properly Upheld Its Denial-Of-Benefits Decision .....................11

3. THE PLAN VESTS METLIFE WITH BROAD DISCRETIONARY AUTHORITY; THEREFORE, THIS COURT SHOULD EMPLOY THE HIGHLY DEFERENTIAL "ABUSE OF DISCRETION" STANDARD OF REVIEW IN EVALUATING METLIFE'S CLAIM DETERMINATIONS ...................................................................19

4. METLIFE DID NOT ABUSE ITS DISCRETION ..............................................20

    A. MetLife's Claim Determination Was Supported By Substantial Evidence ...........................................................................22

    B. MetLife Fully Explained The Basis Of Its Decision................................23

    C. MetLife's Claim Determination Did Not Conflict With The Plain Language Of The Plan....................................................................24

5. CONCLUSION.........................................................................................24

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006)...................... 20

*Bogue v. Ampex Corp.*, 976 F.2d 1319 (9th Cir. 1992), cert. denied, 507 U.S. 1031 (1993) ........................................................................................................... 20

*Canseco v. Construction Laborers Pension Trust*, 93 F.3d 600 (9th Cir. 1996) .... 21

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)................................. 19

*Gilbrook v. City of Westminster*, 177 F.3d 839 (9th Cir. 1999)............................. 21

*Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302 (9th Cir. 1986) ................................................................................................................. 21

*Jones v. Laborers Health & Welfare Trust Fund*, 906 F.2d 480 (9th Cir. 1990) ... 20

*McDaniel v. Chevron Corp.*, 203 F.3d 1099 (9th Cir. 2000)................................. 21

*Meditrust Fin. Servs. Corp. v. The Sterling Chemicals, Inc.,* 168 F.3d 211 (5th Cir. 1999) .......................................................................................................... 21

*Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008) .......................... 19

*Snow v. Standard Ins. Co.*, 87 F.3d 327 (9th Cir. 1996)................................ passim

*Wells v. Reliance Std. Life Ins. Co.*, 285 Fed. Appx. 343 (9th Cir. 2008).............. 20

## Statutes

29 U.S.C. § 1001 *et seq.* .......................................................................................... 1

## Other Authorities

Employee Retirement Income Security Act of 1974 ("ERISA") ............................. 1

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

1.  **INTRODUCTION**

Plaintiff Steven Rowles ("Rowles") initiated this litigation against Defendants Metropolitan Life Insurance Company ("MetLife") and the Air Products and Chemicals, Inc. Long Term Disability Plan ("Plan"), an employee welfare benefit plan sponsored by Rowles' employer, Air Products and Chemicals, Inc. ("Air Products"), and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended, seeking long-term disability ("LTD") benefits.  However, this lawsuit is without merit because MetLife's decision to deny Rowles' claim for LTD benefits under the Plan was reasonable and amply supported by the Administrative Record.

In August 2007, after Rowles had been working as an operations technician at Air Products for less than a year, he left work, claiming that he could no longer perform his duties after a slip-and-fall accident at work.  Rowles claimed that the accident aggravated a previous injury to his back that had resulted from a series of prior accidents – a combination of slip and falls, as well as car accidents – which Rowles claims have contributed to his problems with his back and led to claims for other benefits.  After his doctors indicated that Rowles should have been able to return to work following his August 2007 slip and fall, Rowles was involved in yet another car accident, which he claimed further injured his back and supported his ongoing claim for LTD benefits from MetLife under the Plan.

As discussed more fully below, however, the pertinent medical records submitted for MetLife's consideration, including the opinions of his treating physicians, did not demonstrate sufficient evidence of a disability as defined by the terms of the Plan.  Indeed, Rowles' own doctors repeatedly indicated that he should shortly be able to return to work.  The minimal objective testing and findings

submitted did not substantiate the severity of Rowles' subjective complaints.  The only treatments recommended by his treating physicians at the time of his alleged disability were heat packs and Motrin.  Based on the insufficiency of medical information corroborating a disabling level of impairments, MetLife denied Rowles' claim for LTD benefits.

Following Rowles' request for an administrative appeal, MetLife asked two board-certified independent physician consultants ("IPC") to review his medical records, and both of these doctors opined that insufficient medical evidence existed to conclude that Rowles' was impaired to the extent that he could not perform his own occupation.  As detailed below, substantial evidence supports MetLife's claim determination, and this Court should uphold it—regardless of the applicable standard of judicial review.

Because the Plan documents vest discretionary authority with MetLife, though, it is not sufficient for Rowles' to demonstrate that the evidence in the Administrative Records would support a decision to award him LTD benefits.  Rather, he must prove that MetLife abused its discretion, and he must make that showing based solely upon the information before MetLife when it made its decision.  The Administrative Record confirms that MetLife thoroughly investigated Rowles' claim and reasonably found the medical evidence upon which he relies to support his disability claim to be wanting in numerous respects.  Further, as noted above, two board-certified IPCs opined that Rowles did not have restrictions and limitations that would amount to a "disability" under the Plan.  Based on the entire record, MetLife reasonably determined that Rowles failed to provide medical evidence demonstrating a severity of impairment precluding him from performing his own occupation.  MetLife therefore did not abuse its discretion in denying Rowles' claim for LTD benefits.

2. **METLIFE'S CLAIM INVESTIGATION WAS THOROUGH, COMPREHENSIVE AND YIELDED A CORRECT DETERMINATION**

A. **The Plan Vests Broad Discretionary Authority With MetLife**

As part of its employee benefit package, Air Products offers a variety of benefit plans to its employees.  (AR 1100)  At issue in this case is solely the "Basic Coverage" of LTD insurance offered through the Plan.[1]  (AR 1064)  MetLife is identified as a plan fiduciary for the group LTD Plan.  (AR 1108, 1112)  The Plan also provides that:

> **Discretionary Authority of Plan Administrator and Other Plan Fiduciaries**
> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan.  Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

_____

[1]  Rowles was also enrolled for Optional Coverage (*i.e.* supplemental coverage) under the Plan,  However, the Plan sets forth a "Pre-existing Condition" limitation for that additional coverage.  (AR 1085)  Here, because Rowles had been employed less than one year, MetLife's review during the look-back period (the preceding three months) confirmed his treatment for back conditions.  During the course of MetLife's claim review, Rowles and his attorneys never challenged its determination that he was not eligible for or entitled to Optional Coverage benefits.  In fact, Rowles' counsel conceded that Rowles had a pre-existing condition in correspondence with MetLife: "The medical records that we have submitted demonstrate that Mr. Rowles had a severe back impairment prior to his employment with Air Products.  We therefore recognize that the preexisting condition limitation applies to this claim and this application pertains to the basic plan of Long Term Disability benefits…"  (AR 814)  Further, recovery for Optional Coverage benefits was also not pleaded in Rowles' Complaint.

(AR 1100)

## B.    The Plan Defines "Disability"

Under the terms of the Plan, Rowles would be entitled to LTD benefits if he meets the following definition of disability:

> **Disabled** or **Disability** means that, due to Sickness or as a direct result of accidental injury.
>
> - You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and.
>
> - You are unable to earn:
>
>   - during the Elimination Period[2] and the next 24 months of Sickness or accidental injury, more than 80% of Your Predisability Earnings at Your Own Occupation in Your Local Economy, and
>
>   - after such period, more than 60% of your Predisability Earnings from any employer in Your Local Economy at any gainful occupation for which You are reasonably qualified taking into account Your training, education and experience.

(AR 1066)

## C.    Rowles' LTD Claim, and MetLife's Initial Review

Rowles ceased working as an operations technician for Air Products and Chemicals, Inc. on August 14, 2007, due to an alleged back condition that he re-aggravated when he slipped and fell while working.  (AR 595)  At the time of the

_____
[2] The Plan provided for a 182 day elimination period (AR 1064).  This is a waiting period during which a claimant must be continually disabled before the payment of LTD benefits commence.

alleged new injury, Rowles had been working at Air Products and Chemicals, Inc. less than a year.  Rowles primary job duties requirements were to load and unload large drums, which required pulling, pushing, bending, stooping and lifting of 10 lbs to 50 lbs.  (AR 1035)

Even prior to the August 14, 2007, workplace injury, Rowles had a history of back injuries stemming from alleged slip-and-fall and automobile accidents, for which he received various types of benefits and settlement amounts.  Documents submitted by Rowles to MetLife in connection with his claim indicate the following accidents and payments:[3]

- In July 1993, Rowles settled his claim for workers compensation benefits with dates of injury on April 24, 1990, October 1987, November 1987, August 1988, and September 1987 to August 1989.  The settlement lump sum is $6,750.00.  (AR 733)
- On February 29, 1994, Rowles was evidently involved in an automobile accident.  (AR 865)
- On June 16, 1994, Rowles was seen by an orthopedist in connection with another workers compensation claim he submitted due to an injury he claimed he sustained:  "while at work I was lifting paper rolls about 50 to 80 lbs. each when I developed pain in my lower back."  (AR 219, 865)
- On March 11, 1996, Rowles submitted a claim for worker's compensation benefits due to an illness to his nose and throat.  That claim was denied for lack of medical information supporting his claim. (AR 863)

- In March 2001, Rowles also claims to have suffered an accident at work. (AR 736)

- In March 2004, Rowles was reportedly involved in an automobile accident, which resulted in a claim and settlement.  (AR 737, 866)

- On September 6, 2004, Rowles allegedly fell on the job, from which he hurt his back and for which he filed a workers compensation claim, which ultimately settled in 2008.  (AR 216, 226, 735, 969)

- In January 2005, Rowles apparently had another automobile accident. (AR 737, 866)

- On August 14, 2007, Rowles stated that he slipped and fell at work, and this accident serves as the (initial) basis for his LTD claim at issue in this litigation.  (AR 227-228, 743, 867)

- On June 14, 2008, Rowles stated that he was involved in an automobile accident, which he claims further injured his back.  As a result of this accident, he ultimately received a $15,000 settlement, of which $2,690 was for the replacement of his vehicle.  (AR 732-733)

- In late-2008/early-2009 (after his State Disability Insurance benefits ceased), Rowles almost immediately began receiving unemployment benefits at the rate of $460 per week (less $75 in child support payments).  (AR 218, 230)[4]

---

[4]  Defendants submit that Rowles' application for, and receipt of, unemployment benefits is **highly** noteworthy.  In the application process for those benefits, the claimant must attest that he / she is ready, able and willing to return to the workforce, but he / she is simply unable to locate a job,  Such affirmations would be inconsistent with a contemporaneous claim for LTD benefits, in which a claimant must be unable to perform the job duties associated with his / her occupation.  Rowles has not provided information regarding exactly when he received unemployment benefits. However,his receipt of such benefits during his alleged disability period is further evidence of the reasonableness of MetLife's decision..

In connection with his August 14, 2007 slip-and-fall, which is at issue in the instant case, Rowles submitted a claim for short-term disability benefits to MetLife. MetLife shortly thereafter requested specific information evidencing his medical conditions.  (AR 1038)  Upon physical examination by his treating physician, Dr. James Mays, he was diagnosed with "lower back pain," but clinical tests were negative.  (AR 1032)  For example, Dr. Mays noted that straight leg raising[5] was negative.  (*Id*.)  He also noted that surgery was not being considered.  (*Id*.)  Dr. Mays also indicated Rowles could return to his job that required heavy lifting with no limitations as of September 27, 2007.

Rowles did indeed return to work on September 27, 2007.  (AR 224)  No evidence of other treatments or objective testing/studies was submitted for this time period.  In connection with this injury, MetLife paid short-term disability benefits to Rowles for the period of August 14, 2007 through September 26, 2007, primarily in reliance on Dr. May's diagnosis and Rowles' subjective complaints.  (AR 1024)

Rowles was terminated four days after returning to work, when Rowles indicated that he could not complete the work due to his back condition.  (AR 224)  Shortly thereafter, Rowles submitted a claim for LTD benefits.  Again, MetLife requested updated medical information and records.  (AR 1027)  In support of his claim for LTD benefits, MetLife requested that Rowles and Dr. Mays submit medical records supporting his disability.  In response, MetLife received documentation for medical care in the years 2001, 2004, 2005, 2006 (records from years prior to Rowles' claim).  The documents evidenced that Rowles had been dealing with lower back pain since 2001.  (AR 822-850)  Further, MetLife received two additional records for Dr. Mays' treatment of Rowles.

---

[5]  Straight leg raising is a test to determine whether lower back pain is being caused by a herniated disc.

An October 12, 2007, office visit note indicated that Rowles was suffering from muscle spasm and that the treatment should be physical therapy.  Without any other information or explanation, Dr. Mays indicated that Rowles was 100% disabled, but indicated that Rowles should be able to return to work on November 10, 2007.  (AR 986)

The next record submitted for MetLife's review was a November 27, 2007, Physician's Supplemental Certificate, which indicated that Rowles' lower back pain had improved, and that Rowles was released to return to work on January 4, 2008.  Dr. Mays also indicated that Rowles had self-reported chronic neck and low back pain and that physical examination did show some muscle spasm, as well as Rowles being positive for straight leg raising.  (AR 985)

The next set of clinical findings was from January 7, 2008.  These notes again indicated a diagnosis of low back pain, with pain rated 5 out of 10, and the exam findings indicate back pain at L5-S1 with a positive straight leg raise at 45 degrees.  There was no evidence submitted to MetLife of any objective testing, such as x-rays or MRIs, until Rowles' received an x-ray on January 28, 2008.  It was reported that this x-ray showed early hypertrophic lipping.  Rowles did not return to work, but was not actively receiving any physical therapy, nor was surgery apparently considered.  The records further show that Rowles' only treatment was the taking of Motrin.  Rowles maintained that he was unable to work, despite any objective evidence or testing indicating such.  (AR 1010-1011)

The medical records then indicate that on June 14, 2008, Rowles was in a motor vehicle accident that aggravated his lower back pain.  (AR 891)  Post-accident medical information would ultimately indicate that Rowles received treatment for the period July 2008 onward for back pain with chiropractic medicine, physical therapy,

pain management and consultation with an orthopedic specialist, but this information was not submitted in support of his claim.

### D.   MetLife Properly Concluded That Rowles Did Not Meet The Plan's Definition of Disability

By way of its September 2, 2009 letter, MetLife wrote to Rowles indicating that his claim for LTD benefits was denied because the medical information did not support his entitlement to benefits under the Plan's disability definition.  (AR 1016-1020)  The letter further explained that Rowles was not eligible for benefits under the Optional Coverage because his back condition was a preexisting condition.  (*Id.*)

MetLife's letter explained that MetLife was reviewing Rowles' claim for disability under the Basic Coverage during the elimination period of August 14, 2007 through February 11, 2008 and beyond.  (AR 1018)  After providing a summary of all of the medical evidence submitted in support of his claim, MetLife explained:

> The medical provided does not support an inability to perform your job duties throughout the elimination period and beyond. Despite subjective complaints of pain with straight leg raise in January 2008, there is no documentation of clinical findings of focal neurological deficits, or of nerve root or spinal cord compression.  There are no clinical findings for the time period of October 6, 2007 through January 6, 2008.  An MRI of the lumbar spine was submitted that is dated October 16, 2008 which is over a year after you stopped working on October 6, 2007, and also after an auto accident which occurred in June of 2008.  The[] medical on file does not support a severity of symptoms of back pain that would preclude working from October 6, 2007 forward, and therefore the LTD claim is denied for not meeting the definition of disability throughout the entire waiting period and beyond.

(AR 1019)

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

MetLife then explained that Rowles had the right to appeal the adverse determination and submit additional medical information in support of that administrative appeal within 180 days of the letter.  (AR 1020)

**E.**    **Following Its Thorough Review of Rowles' Administrative Appeal, MetLife Reasonably Upheld Its Denial-Of-Benefits Decision**

Rowles appealed MetLife's denial decision by way of his counsel's letter dated February 26, 2010.  (AR 981-984)  The appeal letter acknowledged that it was evident from the record that Rowles had a back condition when he was hired at his job with Air Products.  Indeed, counsel's letter indicated, "Steven Rowles had already been diagnosed with a serious back impairment before even started working at Air Products."  (AR 981)  The letter also indicated that Rowles was submitting additional medical evidence in support of his appeal, which included additional records from Dr. Mays and other doctors who had treated Rowles between 2007 and 2009.  (AR 982-983)

For the first time on appeal, Rowles also submitted evidence of psychological treatment.  More specifically, a psychological assessment from Andreas DiMeo, Ph.D. dated September 15, 2009 was also submitted in support of his appeal.  (AR 742-755)  The report documented pain and psychological distress with emotional and cognitive symptoms, including sadness, stress, anxiety, irritability, low energy, increased weight changes, lowered resiliency and coping with daily life stressors.  (*Id.*)  It was documented that on examination, psychomotor behavior was slower than average but otherwise there were no abnormal mental status findings.  (AR 752-753)  It was stated that diagnostic impression included adjustment disorder and primarily insomnia.  (AR 753)  Dr. DiMeo recommended cognitive behavior treatment to resolve his insomnia.  (*Id.*)

In an effort to provide Rowles with a full and fair review, MetLife asked that Rowles' file be reviewed by an independent physician consultant ("IPC"), board-certified in orthopedic surgery and a second IPC, board-certified in psychiatry.

Howard Taylor, M.D., the orthopedic consultant, reviewed all of the medical information submitted in support of Rowles' claim. Dr. Taylor also conducted a peer discussion with Dr. Mays on April 6, 2010 in connection with his review. After reviewing all of the material submitted by Rowles and his treating physicians, Dr. Taylor issued a detailed and extensive report on April 6, 2010. (AR 796-801) Dr. Taylor's report indicated that he asked Dr. Mays what had changed in Rowles' ability to function in October 2007. Dr. Taylor's report notably indicates that Dr. Mays advised him that he did not know why the pain had recurred and that Rowles did not report that he had been injured at work (contrary to Rowles' assertions to MetLife that he had fallen while working). (AR 800) Dr. Taylor's report provided a detailed summary of the medical records submitted to MetLife in support of his claim for benefits. He ultimately summarized these documents as follows:

> In summary Mr. Rowles is a 45-year-old man he has a history of several injuries to his lower back going back to 1994. He reportedly had an accident in August 2007 and saw Dr. James Mays. He was treated with medication returned to work full duty on 09/27/2007. According to the records he worked for a few days and then was terminated. There are notes from Dr. Mays dated 10/12/2007 and 11/27/2007. These report spasm and positive straight leg raising and he is being treated with physical therapy. There are no physical therapy records from this period of time. He was reported to be in a motor vehicle accident on 06/14/2008 but we do not have those records. There are no medical records from 2008 and in 2009 he was seen for evaluations and treatment with both chiropractic and pain management.

(AR 799)

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

Dr. Taylor concluded that while the medical information supported physical, functional limitations due to back strain from August 14, 2007 to September 27, 2007, there was no medical evidence of continuous disability after August 14, 2007. More specifically, Dr. Taylor opined:

> [T]he medical information supplied does support functional limitations beyond 08/14/2007. Based on the records we have Mr. Rowles suffered a sprain/strain of his lower back on that date. Dr. James May completed a questionnaire in which he stated that Mr. Rowles was advised to stop working on that date. The anticipated return to work date was 09/27/2007 and Mr. Rowles was released to return to work on that date. According to the records he did return to work on that date and therefore would not be considered to have functional limitations that include any reduction in his ability to work full time as of that date.
>
> The medical records do not report what happened when he returned to work other than the fact that he was terminated. Similarly the medical records do not report what happened between 10/05/2007 when he was terminated and 10/12/2007 when he returned to see Dr. Mays. The medical records from the 2 visits with Dr. Mays on 10/12/2007 and 11/27/2007 list treatment of hot packs but no medications. This is not consistent with a severe degree of pain.
>
> Dr. Mays told me that Mr. Rowles did not give a reason for the recurrence of the pain.
>
> It is reasonable that he would have restrictions and limitations after his automobile accident in June 2008. Is reported Rowles was to be treated with physical therapy for 12 weeks. There are no other medical records after this until May 2009. There are no records during this time to support any ongoing restrictions or limitations.

(AR 801)

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

Shortly after Dr. Taylor issued his report, on April 19, 2010, Rowles' attorney submitted additional medical records from August 2007 through November 24, 2008. (AR 719-720)  In order to ensure that Dr. Taylor's opinion was complete, MetLife provided these additional records to Dr. Taylor and asked him to provide a supplemental report.  (AR 711-712)  Dr. Taylor again provided an in-depth analysis of these documents, which included the medical records following the auto accident, and ultimately concluded that the additional records did not change his previous opinions.  (AR 712)

The psychiatric consultant, Marcus Goldman, M.D., completed his review of Rowles' medical information on May 7, 2010.  (AR 699-703)  Dr. Goldman conducted a peer discussion with Dr. DiMeo, and Dr. DiMeo advised that he saw Rowles for one visit and that Rowles did not return despite recommendation for treatment.  (AR 700)

Following his review of all of the medical information submitted in support of Rowles' claim, Dr. Goldman concluded that the medical information did not support psychiatric functional impairment to preclude full-time work from August 14, 2007 onward.  (AR 702-703)  More specifically, Dr. Goldman opined:

> Based on the review of the available data, as well as a page-by-page review of this almost 400-page record, this reviewer is unable to establish the presence of an impairing or functionally debilitating mental condition beyond August 14, 2007.  From a psychiatric perspective, the data are very poorly compelling. From August 14, 2007, onwards, there is but one dedicated mental health document.  This is an assessment, which is suggested to be a one time only assessment, from Dr. DiMeo dated September 15, 2009, in which Mr. Rowles was noted to have a diagnosis of an adjustment disorder.  There is no evidence that Mr. Rowles is engaged in active dedicated ongoing mental health treatment with a psychiatrist and/or psychotherapist.  There are no psychotherapeutic treatment plans, no measured or measurable

goals and no strategies to return Mr. Rowles to work.  Although Mr. Rowles did undergo a comprehensive diagnostic assessment by Dr. DiMeo on September 15, 2009, the data suggest that there has been no mental health intervention since.  There is no evidence of active or aggressive psychopharmacotherapy.  There are no data to support the presence of suicidal or homicidal ideation, psychosis, mania, aggressive behavior, vegetative signs, volatility, lethargy, obtundation, or altered sensorium.  There are no data that support impairments in activities of daily living or independent activities of daily living as a result of a major mental condition.  Mr. Rowles was not suggested to have required treatment in more intense levels of care such as IOP (intensive outpatient program) or PHP (partial hospitalization program).  The absence of ongoing dedicated mental health treatment suggests either a lack of intensity of treatment or a lack of need in the context of no significant data that support severe psychopathology.  Nevertheless, given the overall size of this record, 399 pages, that there is only one fairly recently dedicated mental health document, September 15, 2009, from Dr. DiMeo, strongly suggests an absence of current severe psychopathology.  It is this reviewer's opinion that the data do not clearly or convincingly establish a presence of a mental disorder of such seventy as to be functionally impairing.

(*Id.*)

On June 1, 2010, MetLife wrote to Rowles' attorney and explained that its prior decision to deny his LTD benefit claim had been upheld after its appellate review.  (AR 695-698)  After quoting the applicable definition of disability and providing a two-page summary of all of the medical information from Dr. Mays and Rowles' other physicians, as well as the opinions of the IPCs, MetLife's letter stated as follows:

In conclusion, although we acknowledge that your client has a condition that he believes renders him disabled, the impairment level that Mr. Rowles reported does not correlate with the medical findings on file.  While Mr. Rowles' report of an inability to work due to back pain was carefully considered, there were no severe,

clinical findings to support a physical impairment from September 27, 2007 onward.  Also, while Mr. Rowles was diagnosed with adjustment disorder and insomnia on September 15, 2009, there were no severe, psychiatric clinical findings to support impairment from August 14, 2007 onward.  As such, the medical information does not support that Mr. Rowles was unable to perform his own occupation as an operations technician on a continuous basis throughout your client's entire elimination period, from August 14, 2007 to February 18, 2008, onward.  Therefore, the previous decision to deny Mr. Rowles LTD benefits has been upheld and remains in effect.

(AR 698)

The letter concluded by informing Rowles that he had exhausted his administrative remedies and that no further appeals would be considered.  (*Id.*)

On June 21, 2010 – after the time for Rowles to submit information in support of his claim, and in response to MetLife's final denial letter – Rowles' attorney submitted additional information, raised questions with Dr. Taylor's reviews, and requested that MetLife reconsider its decision to uphold its benefit denial.  (AR 567-570)  As a courtesy, MetLife again provided the additional medical information to Dr. Taylor and asked Dr. Taylor to respond to Rowles' counsel's questions.

Dr. Taylor specifically addressed each of Rowles' counsel's questions and referred to the medical evidence that supported each of his answers and opinions. (AR 555-560)  When asked whether the additional medical information altered his previous assessment, Dr. Taylor opined:

I previously opined that the medical information did support functional limitations beyond 08/14/2007.  I also said that Mr. Rowles was released to work without limitations on 09/27/2007.  I said that Mr. Rowles returned to work on that date but the new records include a letter from the company's attorney stating that he worked on 09/29/2007.  The letter states that he worked for 4 ½ days.  I opined that by releasing him to

regular work with no limitations that he would not be considered to have functional limitations including any reduction in his ability to work full time as of that date. I also previously reported that I had spoken with Dr. Mays and he told me that Mr. Rowles did not contemporaneously report any difficulties at work during that time.

The additional medical information does not change my previous assessment. The additional medical information does not directly address the functional capability at the time under question as clearly as Dr. Mays records and my conversation with Dr. Mays.

(AR 560)

After consideration of this additional information, including Dr. Taylor's responses, MetLife again wrote to Rowles' attorney explaining that the information submitted did not change its denial decision. (AR 552-554) MetLife's August 5, 2010 letter concluded:

The consultant reviewed the additional information received on June 21, 2010 and concluded that the medical information does not alter the previous assessment that the medical information does not support functional impairment beyond September 27, 2007, when your client was released to return to work.. The consultant determined that while on January 26, 2010 Dr. Ciepiela assessed Mr. Rowles had 30% whole person impairment of the lumbar spine by analogy and 3% whole person impairment from pain, Dr. Ciepiela's review did not include review of medical records from Dr. Mays, the only provider who treated Mr. Rowles in August 2007. The consultant noted that although Dr. Durrant opined on April 28, 2010 that Mr. Rowles was temporarily, totally disabled, there was no comment/assessment of his capability as of September 27, 2007. The consultant determined that while Mr. Rowles indicated in the supplemental declaration that a few days after he was terminated on October 5, 2007, he reported to Dr. Mays that his return to work didn't work out and that he continued to experience the same, significant pain in his back and right leg as when he saw Dr. Mays in August 2007, the information was not supported in the medical records or during peer discussion with

Dr. Mays.  The consultant noted that the February 8, 2010 report from Dr. Long indicates that he deferred comments to the primary treating provider.  The consultant noted that a March 5, 2010 supplemental report from Dr. Long including review of the February 2, 2010 orthopedic consultation from Dr. Larsen documented that Mr. Rowles hurt his back on August 14, 2007 for two and one-half-years, and there was no documentation of any other accident.  The consultant determined that the March 9, 2010 worker compensation evaluation for pain management by Dr. Rastegar does not documented when the pain commenced.  The consultant determined that although Dr. Mays indicated in his May 13, 2010 letter that the return to work date of October 6, 2007 was not appropriate, the information does not correlate with the medical information he provided in the April 7, 2010 peer discussion and does not mention the September 27, 2007 return to work with no limitations that Dr. Mays assessed.  The consultant determined that Mr. Rowles' MRI findings were noted as of June 27, 2006 and that he was performing his work duties at that time and prior to his injury in August 2007.

Based on the medical information and the Orthopedic Surgery consultant addendum review, the medical information does not alter the previous appeal uphold decision.

(AR 553-554)

This action was commenced almost one year later, on June 21, 2011.

3.   **THE PLAN VESTS METLIFE WITH BROAD DISCRETIONARY AUTHORITY; THEREFORE, THIS COURT SHOULD EMPLOY THE HIGHLY DEFERENTIAL "ABUSE OF DISCRETION" STANDARD OF REVIEW IN EVALUATING METLIFE'S CLAIM DETERMINATIONS**

The highly deferential, abuse of discretion standard applies where, as here, the Plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). This analysis has in no way been disturbed by the recent Supreme Court decision in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008).

As applied here, the determination of the appropriate standard of judicial review is a straightforward one. MetLife is identified as a plan fiduciary for the group LTD Plan. (AR 1108, 1112) The Plan documents unmistakably grant MetLife, as a Plan fiduciary, with broad decision-making authority:

> **Discretionary Authority of Plan Administrator and Other Plan Fiduciaries**
> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(AR 1100)

Such language is comparable to plan provisions that have previously been held – by both the Ninth Circuit Court of Appeals and the United States Supreme Court – to confer discretion and to mandate an "abuse of discretion" standard of review.  *See, e.g., Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006); *Bogue v. Ampex Corp.*, 976 F.2d 1319 (9th Cir. 1992), cert. denied, 507 U.S. 1031 (1993); *Jones v. Laborers Health & Welfare Trust Fund*, 906 F.2d 480, 481 (9th Cir. 1990). Indeed, the Plan language here is more explicit than, and confers as much discretion to MetLife as, the language in *Abatie*.  In the words of *Abatie*, the Plan documents at issue here "bestow[] on the administrator the responsibility to interpret the terms of the plan and determine eligibility for benefits."  *Id*. at 965.  Thus, MetLife's claim determination is entitled to deferential review.

4.    **METLIFE DID NOT ABUSE ITS DISCRETION**

In a post-*Glenn* decision, the Ninth Circuit reaffirmed that an ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact.  *See Wells v. Reliance Std. Life Ins. Co.*, 285 Fed. Appx. 343 (9th Cir. 2008).  This case confirms that after *Glenn*, the Ninth Circuit's abuse-of-discretion assessment has remained the same as it was dating back to *Snow v. Standard Ins. Co.*, 87 F.3d 327, 331 (9th Cir. 1996) (setting forth the same three-part test for determining whether an ERISA administrator has abused its discretion in denying a claim for benefits).

In *Snow v. Standard Ins. Co.*, 87 F.3d 327, 331 (9th Cir. 1996), the Ninth Circuit set forth a three-part test for determining whether an ERISA administrator (such as MetLife) has abused its discretion in denying a claim for benefits:  "[I]t is an abuse of discretion for an ERISA plan administrator to make a decision without any

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

explanation, or in a way that conflicts with the plain language of the plan, or that is based upon clearly erroneous findings of fact."

In *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1113 (9th Cir. 2000), the Ninth Circuit clarified that "[a] plan administrator's decision to deny benefits **must** be upheld under the abuse of discretion standard if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith." (Emphasis added.) Under an abuse of discretion standard, the question to be asked is *not* whose interpretation of the plan documents is most persuasive, but whether the interpretation the administrator or claim fiduciary used is unreasonable. *Id.* at 1113, *citing Canseco v. Construction Laborers Pension Trust,* 93 F.3d 600, 606 (9th Cir. 1996); *see also Hancock v. Montgomery Ward Long Term Disability Trust,* 787 F.2d 1302, 1307 (9th Cir. 1986).

Therefore, an administrator's decision should be affirmed if it was based on substantial evidence and complied with the terms of the plan. *See, e.g., Meditrust Fin. Servs. Corp. v. The Sterling Chems., Inc.,* 168 F.3d 211, 215 (5th Cir. 1999). Substantial evidence does not mean that the administrator's decision must be proven correct by a preponderance of the evidence. Rather, substantial evidence "is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Gilbrook v. City of Westminster,* 177 F.3d 839, 856 (9th Cir. 1999).

MetLife did not abuse its discretion because the Administrative Record shows that MetLife's claim determination was not based upon clearly erroneous findings of fact (because it was supported by substantial evidence from Rowles, his treating physicians and multiple Independent Physician Consultants); MetLife detailed its reasoning for the claim-termination decision to Rowles in its various letters; and

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

1    MetLife's determination did not conflict with the plain language of the Plan (indeed,

2    MetLife relied on such language).

3

4          A.   **MetLife's Claim Determination Was Supported By**

5               **Substantial Evidence**

6

7          MetLife's decision to deny Rowles' claim was not "based upon clearly

8    erroneous findings of fact," particularly given the meaning of that phrase within the

9    ERISA context.  Its claim determination was supported by substantial evidence,

10   including information from Rowles himself and documents from his treating

11   physicians.

12         As discussed above, MetLife's decision was based on Rowles' entire claim

13   file.  According to both independent medical experts, the information in the

14   Administrative Record did not indicate a level of impairment that would have

15   precluded Rowles from performing the material and substantial duties of his own

16   occupation.  First, the board-certified psychiatrist indicated that "[b]ased on the

17   review of the available data, as well as a page-by-page review of this almost 400-

18   page record, this reviewer is unable to establish the presence of an impairing or

19   functionally debilitating mental condition beyond August 14, 2007."  (AR 702-703)

20   Second, the board-certified orthopedic surgeon stated, "Dr. James May completed a

21   questionnaire in which he stated that Mr. Rowles was advised to stop working on

22   [8/14/07].  The anticipated return to work date was 09/27/2007 and Mr. Rowles was

23   released to return to work on that date.  According to the records he did return to

24   work on that date and therefore would not be considered to have functional

25   limitations that include any reduction in his ability to work full time as of that date."

26   (AR 801)  Additionally, the board certified orthopedic surgeon noted regarding the

27   time immediately following the accident, "[t]he medical records from the 2 visits

28

with Dr. Mays on 10/12/2007 and 11/27/2007 list treatment of hot packs but no medications. This is not consistent with a severe degree of pain." (*Id.*)

Given the reports of Drs. Taylor and Goldman, as well as all other information in the Administrative Record – most notably that Dr. Mays, Rowles' primary physician, said that Rowles was cleared to return to work as of September 27, 2007 – it was reasonable for MetLife to conclude that Rowles was not disabled as that term is defined by the Plan. Indeed, substantial evidence supports MetLife's determination of Rowles' claim.

- In response to his muscle spasms and back strain, from which people routinely recover, "all" that he was given were Motrin and heat wraps – surgery, or more evasive treatment, was never considered. (AR 1032, 986, 985)

- Immediately following the alleged accident, Rowles was told by Dr. Mays that he could return to work September 27, 2007. (AR 1032)

- Following an October 3, 2007 treatment, Dr. Mays indicated that Rowles could return to work on October 6, 2007 – just three days later. (AR 241)

- On October 12, 2007, Rowles was told by Dr. Mays that he could return to work November 10, 2007. (AR 986)

- On November 27, 2007, Rowles was told by Dr. Mays that he could return to work January 4, 2008. (AR 985, 242)

- Rowles' conditions did not render him "disabled" (as defined by the Plan) for the duration of the Plan's 182-day elimination period (which is essentially a waiting period during which a claimant must be continuously disabled before the payment of benefits commences). In order to be entitled to benefits, Rowles needed to establish continuous disability between August 14, 2007 and February 12, 2008. As his treating physician said that Rowles should have returned to work four times during that period (AR 1032, 986, 985, 241-242), he does not meet the elimination period requirement.

- IPC Dr. Taylor's telephone conference with Dr. Mays, during which Dr. Taylor said that Rowles never indicated why he could not continue working and never identified any additional cause or set-back.  In other words, Rowles did not tell Dr. Mays of the slip and fall he claims occurred on August 14, 2007.  (AR 801)  This is supported by Dr. Mays, on August 21, 2007, indicating that Rowles' back pain was not the result of an industrial accident.  (AR 240)

- On March 20, 2008, Dr. Mays indicated that Rowles could return to work immediately.  (AR 243)

- There was no objective evidence of disability during the elimination period submitted to MetLife – no x-ray or MRI results evidencing that Rowles was suffering from a condition that would preclude him from work.  (AR 985-986, 241-245)  "We have held that an administrator may deny benefits based on a lack of objective evidence of disability."  *Hunt v. Metropolitan Life Ins. Co.*, 425 F.3d 489, 491 (8th Cir. 2005) (citation omitted) (upholding a denial of benefits where objective medical evidence did not support claimed disability from restless leg syndrome and related problems).

- Dr. Taylor opined on three separate occasions – and after providing Rowles with repeated opportunities to submit additional evidence – that Rowles was not continually disabled after August 14, 2007.  MetLife can properly credit the opinions of its consulting physicians, and it need not adopt the opinions of Rowles' doctor without question because the "treating physician rule" (requiring strict deference to such opinions) has been abrogated in the ERISA context.  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003).

Based on the above, it cannot be said that an objective review of the Administrative Record reveals "a definite and firm conviction that a mistake has been committed."  *Snow, supra* at 331.

### B.   **MetLife Fully Explained The Basis Of Its Decision**

*Snow* also requires that an administrator/fiduciary explain its decision.  *Snow, supra* at 331.  As noted above, MetLife sent Rowles an adverse determination letter dated September 2, 2009 in which it specifically explained the reasons why Rowles' LTD claim was denied.  (AR 1016-1020)  The five-page, single-spaced letter set forth the pertinent Plan provisions and summarized the information supporting the claim decision with reference to particular medical records, including Dr. May's notes and findings.  (*Id.*)  On June 1, 2010, MetLife explained the reasons underlying its determination to uphold the prior denial decision following an administrative appeal.  This four-page, single-spaced letter again provided the relevant definition of disability, a two page summary of Dr. Mays' findings and a summary of the two IPCs' conclusions.  (AR 695-698)  Furthermore, despite being under no obligation to do so (by the Plan or by ERISA), MetLife undertook an additional review and provided Rowles with another detailed letter, dated August 5, 2010 and three, single-spaced pages in length, explaining why he was not entitled to LTD benefits under the terms of the Plan.  (AR 552-554)  There can be no reasonable dispute that MetLife fully explained the basis for its claim determination.

### C.   **MetLife's Claim Determination Did Not Conflict With The Plain Language Of The Plan**

The third prong of the *Snow* test requires that an administrator/fiduciary's decision not "conflict with the plain language of the plan."  *Id.*  MetLife's claim determination did not contradict the Plan's "plain language" and in fact relied on such language.  MetLife's determination – that Rowles was not "disabled" as defined by the Plan as of October 6. 2007 – was wholly consistent with the terms of the Plan.  Moreover, as part of its discretionary authority, MetLife is empowered to interpret the

terms of the Plan.  Nevertheless, the Plan's provisions are clear.  MetLife's determination did not conflict with that unambiguous language.

<h3 align="center">5.   <u>CONCLUSION</u></h3>

MetLife's determination that Rowles was not entitled to LTD benefits under the Plan is fully supported by the Administrative Record and constituted a reasonable claim decision.  When evaluated under the highly deferential "abuse of discretion" standard of review, MetLife respectfully submits that this Court should conclude: (1) that no abuse of discretion occurred; (2) that Rowles is not entitled to benefits; and (3) that Defendants are entitled to judgment.

Dated:  June 4, 2012                          BARGER & WOLEN LLP


                                              By: /s/ *Robert K. Renner*
                                                  ROBERT K. RENNER
                                                  JAMES C. CASTLE
                                                  Attorneys for Defendants
                                                  Metropolitan Life Insurance
                                                  Company and Air Products and
                                                  Chemicals, Inc. Group Long Term
                                                  Disability Plan